******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* AL-MALIK SHERROD
(AC 36508)

Beach, Alvord and Bear, Js.

*Argued February 3—officially released May 26, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Lobo, J.)

*Douglas H. Butler*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Ann Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Al-Malik Sherrod, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32[1] and committing him to the custody of the Commissioner of Correction for the remaining eight years of his original sentence. On appeal, the defendant claims that the trial court lacked sufficient evidence to support its finding of a violation of probation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On May 31, 2001, the defendant pleaded guilty pursuant to the *Alford* doctrine[2] to the offenses of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1), arising out of an incident that occurred on July 13, 2000. On July 13, 2001, the court, *Solomon, J.*, sentenced the defendant to twenty years incarceration, execution suspended after twelve years, and five years of probation. The conditions of probation, signed by the defendant on July 3, 2012, included the special condition of no possession of any weapons. Additionally, it included an order that he not violate any criminal law of the United States, this state, or any other state or territory. It also included an order that he, while on probation for his felony convictions, not possess, receive, or transport any firearm. The defendant was released from custody and began serving his probation on July 30, 2012.

On September 14, 2012, the defendant, who was still on probation, was arrested and subsequently charged with the offenses of assault in the first degree in violation of § 53a-59 (a) (1), criminal possession of a firearm in violation of General Statutes § 53a-217c, and carrying a pistol without a permit in violation of General Statutes § 29-35. Thereafter, he was charged with violating the conditions of his probation in violation of § 53a-32.

The record reveals that the following events led to the defendant's arrest on September 14, 2012. At approximately 10 p.m., John Hudson was assembling his hotdog stand with his wife; his stepdaughter, Fatima Mitchell; and his son, the victim, on the corner of Allyn and High Streets in Hartford. Hudson and Mitchell were serving two customers when they noticed two men smoking cigarettes in front of a nearby fence. One of the men, who was later identified by Hudson and Mitchell as the defendant, appeared to be intoxicated. After the second man purchased a bottle of water and returned to the fence, Hudson and Mitchell heard a gunshot. A bullet then entered and exited the leg of the victim. Hudson saw the defendant with a gun in his hand and heard the person next to the defendant state to the defendant, "you just shot the kid." The other man fled

the scene, but several people restrained the defendant until the police arrived. Both Hudson and Mitchell later participated in a photographic array identification conducted by the police and identified the defendant as the man seen holding the gun on the night of the incident.

The court, *Lobo, J.*, held a probation revocation hearing on August 26 and September 23, 2013. After the conclusion of evidence on September 23, 2013, the court rendered a short, oral decision as follows: "I've had the opportunity to read all of the exhibits . . . . I've had the opportunity today to look at the exhibits as presented, obviously I've had the opportunity to [hear] the testimonial evidence, so . . . I will note that the defendant was convicted of the crime of robbery [in the] first [degree] . . . and assault [in the] first [degree] . . . [and] was sentenced on July 13, 2001 by Judge Solomon to twenty years, suspended after twelve . . . with five years of probation.

"Relevant terms and conditions of his probation provided [in relevant] part that the defendant was not to violate any criminal laws, as well as for there to be no possession of any weapon.

"The court finds that the evidence presented by the state by a fair preponderance of the evidence [proves] that the defendant was aware of the conditions of his probation and that the state has proven by a fair preponderance of the evidence that the defendant did violate the conditions of his probation."

On October 23, 2013, the court held a dispositional hearing in which the defendant's probation officer testified that the defendant was not a good candidate for continued probation. The state asked the court to incarcerate the defendant for the remaining eight years of his sentence.

In its oral decision after the dispositional hearing, the court stated that it had "carefully considered the interests . . . which include the probationer's liberty, rehabilitation, the need to protect the public, whether the goals of probation are being served, whether the probationer's behavior is harmful to his own rehabilitation as well as the safety of the public, and whether the probationer has abused the opportunity given him to avoid incarceration."

The court found that "[the defendant] acknowledged the conditions of his probation. That he was not to commit any violations of the law. As to the evidence presented in the adjudicatory phase of the hearing, [the court] found that [the defendant] did violate his probation and that one of the conditions, in addition to not violating the law, was to not possess any weapons. He was in violation of that condition not to possess any weapons when he did, in fact, appear to possess a handgun at which time an individual was shot through the leg." The court also found "that the beneficial

aspects of probation were not, in fact, being served
. . . [and] that they were not likely to be served in the
immediate future based on the conduct in this instance,
because of the fact that [the defendant] has received
the benefit [of probation] two prior times and both
times he was not on probation for an extremely lengthy
period of time before two violent [incidents] occurred."
The court opened the defendant's 2001 judgment of
conviction and sentenced the defendant to serve the
remaining eight years of his twenty year sentence. The
defendant has appealed from the trial court's judgment
revoking his probation.

On appeal, the defendant claims that the court lacked
sufficient evidence to support its finding of a violation
of probation. He argues that the evidence adduced at
trial regarding his intent was insufficient to prove by a
fair preponderance of the evidence that his conduct
amounted to an assault in the first degree. Additionally,
the defendant argues that the evidence regarding actual
or constructive possession of the firearm that he was
alleged to have discharged was insufficient to prove
by a preponderance of the evidence that his conduct
amounted to criminal possession of a firearm or car-
rying a pistol without a permit. We disagree.

"[U]nder § 53a-32, a probation revocation hearing has
two distinct components. . . . The trial court must
first conduct an adversarial evidentiary hearing to deter-
mine whether the defendant has in fact violated a condi-
tion of probation. . . . If the trial court determines that
the evidence has established a violation of a condition
of probation, then it proceeds to the second component
of probation revocation, the determination of whether
the defendant's probationary status should be revoked.
On the basis of its consideration of the whole record,
the trial court may continue or revoke the sentence of
probation . . . [and] . . . require the defendant to
serve the sentence imposed or impose any lesser sen-
tence. . . . In making this second determination, the
trial court is vested with broad discretion. . . .

"To support a finding of probation violation, the evi-
dence must induce a reasonable belief that it is more
probable than not that the defendant has violated a
condition of his or her probation. . . . In making its
factual determination, the trial court is entitled to draw
reasonable and logical inferences from the evidence.
. . . This court may reverse the trial court's initial fac-
tual determination that a condition of probation has
been violated only if we determine that such a finding
was clearly erroneous. . . . A finding of fact is clearly
erroneous when there is no evidence to support it . . .
or when although there is evidence to support it, the
reviewing court on the entire evidence is left with the
definite and firm conviction that a mistake has been
committed. . . . In making this determination, every
reasonable presumption must be given in favor of the

trial court's ruling. . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Rollins*, 51 Conn. App. 478, 481–82, 723 A.2d 817 (1999).

"A revocation of probation proceeding based upon a violation of a criminal law need not be deferred until after a disposition of the charges underlying the arrest because the purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation . . . rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing need not be sufficient to sustain a violation of a criminal law. . . . In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation." (Citations omitted; internal quotation marks omitted.) Id., 484. Even if the defendant is ultimately acquitted of the pending criminal charges, the result of the probation hearing would not be affected. See id., 483 ("Even if we assume, arguendo, that the defendant was in fact acquitted, the outcome of this case remains the same. In a criminal proceeding, substantive guilt must be established beyond a reasonable doubt; a probation violation need be proven only by a preponderance of the evidence.").

The defendant erroneously conflates the criminal charges arising out of the September 14, 2012 incident with the violation of probation charge. He essentially argues that the state did not prove the criminal charges of assault in the first degree and either criminal possession of a firearm or carrying a pistol without a permit in the adjudicatory phase of the violation of probation hearing. The state, however, had no such burden of proof in the violation of probation proceeding.

After a careful review of the record, we conclude that the state met its burden in proving that the defendant violated his probation. Specifically, a fair reading of the record provides us with sufficient proof that the court reasonably found, by a fair preponderance of the evidence, that the defendant engaged in the commission of acts sufficient to violate the conditions of his probation, namely, that he not possess any weapons and that he not violate any criminal law of this state. Accordingly, the court's findings were not clearly erroneous.

The judgment is affirmed.

[1] General Statutes § 53a-32 (d) provides: "If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a

portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[2] "A criminal defendant who enters a guilty plea under the *Alford* doctrine does not admit guilt but acknowledges that the state has sufficient evidence to convict. See *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985); see also *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (holding that '[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime')." *State* v. *Fairchild*, 155 Conn. App. 196, 199 n.2, 108 A.3d 1162, cert. denied, 316 Conn. 902,     A.3d     (2015).